Rogers, J.
A temporary restraining order is now in force in this case and it is for hearing upon an application of the plaintiffs for a temporary injunction, and also a motion by the defendants to dissolve said temporary restraining order. The pleadings filed are the petition and an answer by all the defendants but one. The application is heard, upon these pleadings and evidence adduced. The’ petition is voluminous and I will not undertake to recite the claims made therein in detail, but will only state some of the principal points claimed for the petition.
The petition is essentially one for an injunction to prevent the Chesapeake & Ohio Railway Company and the Lake Shore & Michigan Southern Railway Company from voting certain shares of stock owned by them, respectively, of the Kanawha & Michigan Railway Company. And'the ground upon which plaintiffs, as minority stockholders, plant their claim is that the Chesapeake & Ohio and the Lake Shore have entered into a scheme or plan by which they hold, namely, the Chesapeake & Ohio, a majority of the common stock of the Hocking Valley Railway Company and 22,550 shares of stock of the Kanawha & Michigan Railway Company, and the Lake Shore all of the stock of the Toledo & Ohio Central Railway Company and 22,550 shares of stock of the Kanawha & Michigan Railway Company, making them holders of the majority of the stock; that the Hocking Valley Railway Company and the Kanawha & Michigan Railway Company, as decreed by the circuit court of this county, are parallel and competing lines, and the Hocking Valley and the Toledo & Ohio Central are also parallel and competing lines; and that the Chesapeake & Ohio and the Lake Shore propose to control and operate these three lines of .railroad, which are competing and parallel as above stated, in such a way as to stifle competition, create a,monopoly in the coal carry business of the Hocking Valley, and in restraint of trade; and that the three roads are to be operated as one for the benefit of the two stockholding roads, namely, the Chesapeake & Ohio, and the Lake Shore, and to the detriment of the plaintiffs as minority stockholders of the Kanawha & Michigan.
*315 The first principal claim of the plaintiffs is that the scheme or plan entered into between the Chesapeake & Ohio and the Lake Shore for operating the Toledo & Ohio Central, the Hocking Valley and the Kanawha & Michigan creates a monopoly in restraint of trade, both under the common law and under the Valentine anti-trust act, and is in violation of the Ohio statutes with regard to ownership of parallel and competing railroads; and the second principal claim of the plaintiffs is that neither the Chesapeake & Ohio nor the Lake Shore has any right or authority to hold stock of another railroad company in Ohio and exercise that ownership as stockholders in voting at stockholders ’ meetings and the like. In other words, that such ownership by one railroad company of the stock of another, with the view of exercising ownership in Ohio, is illegal and void under the statutes of this state..
In support of these propositions with regard to the alleged illegal combination and the illegal holding of stock of one railroad by another, there has been offered evidence of what may be termed as the Trumbull-Newman agreement. While this evidence is claimed not to be binding upon the Lake Shore as a declaration against interest, there is no evidence offered by the Lake Shore to the contrary, and for the purposes of a preliminary injunction, the court does not adhere to those strict rules of proof that would be required upon final hearing in determining what the facts are to influence-the court on the question of allowing or disallowing a temporary injunction. Casey v. Cincinnati Typographical Union, 45 Fed., 135, 147.
The evidence of this agreement is, in effect, that although the Hocking Valley and the Toledo & Ohio Central are parallel and competing railroads, it is proposed to use the T. & O. C. tracks north of the K. & M. by the Hocking Valley for its south-bound freight, and the Hocking Valley tracks by the T. & O. C. for its north-bound freight, making, in effect, a double track road out of two parallel and competing railroads for the benefit of the two stockholding railroads companies; and it is further shown that the Kanawha & Michigan Railroad is to be the instrument or means by which this double track scheme may be, in part, carried out. And to this combination, the plaintiffs as minority stoekholders of the-Kanawha & Michigan object on the ground, among other things, that it subjects the Kanawha & Michigan *316 Railway Company to the domination of the Chesapeake & Ohio and the Lake Shore, under an agreement condemned by the laws of Ohio, which forbid parallel and competing railroads to be operated as one, and it subjects their stock as minority stockholders to the dominating will of the two stockholding railroad companies, and thereby the Kanawha & Michigan is committed to an unlawful scheme or combination, against the will of the minority stockholders, tending to oppress them as such stockholders, and laying their corporation liable to forfeiture for the alleged illegal acts of the majority stockholders.
On the other hand, it is claimed, among other things, that if the facts as recited be true, the plaintiffs have no right by injunction to prevent the two defendant companies from exercising their right to vote their stock; that the right to carry out the alleged unlawful scheme is vested in directors and not in the stockholders,. and it will be time enough when the directors attempt to carry out such unlawful scheme to enjoin them, and not attempt to enjoin the stockholders in voting for directors who may contemplate carrying out the alleged unlawful scheme; that an- injunction against voting stock operates as a species of disfranchisement, and courts will not interfere with the right of the stockholder to use such property in voting it as he pleases.
The foregoing are some of the questions involved in this case, and they are grave and difficult of solution. I have gone over the evidence, so far as I deemed it material, together with the briefs of counsel, in order to make up my mind what should be done in the premises. The situation so far as the defendants -are concerned, discloses that the majority stockholders are in possession, by their directors and officers, of these three competing railroads above mentioned; that what is sought at present is not to dispossess them of their right to continue in the control and operation of these roads nor in the enjoyment of the fruits of the stock, further than to require them to hold the same in statu quo until the court can finally determine the rights between these parties upon a full hearing upon the issues.
The matter of allowing a temporary injunction is often addressed to the discretion of the court. Whether or not such injunction shall be allowed, not infrequently turns upon the question of the relative injury that may result by allowing or disallowing the same. Having gone into the ease far enough to de *317 termine that there are real and substantial questions involving the rights of these parties, both of fact and law, without expressing any opinion or even without having the means, up to this time, of forming a conclusive opinion upon any of the questions involved, I have concluded that a temporary injunction should issue to stay the hands of defendants until the court can, upon a full hearing, determine the rights between these parties. I am of opinion that upon the case as it has been presented to me that less injury would be done to the defendants in thus maintaining the status quo than would be done to the plaintiffs if the defendants were permitted to carry out the alleged unlawful combination, if it be unlawful, as set forth in the petition and as shown by the evidence.
I do not wish to be understood as expressing an opinion upon the merits. It is sufficient for the purposes of this application that the pleadings and evidence present a case which makes the transaction a proper subject for investigation in a court of equity; and in order to give opportunity for such investigation, it is proper that the injunctive relief asked for, be granted. It may be that upon final hearing, the plaintiffs’ case will be completely overthrown. However, for the present, it is sufficient that a fair question is made as to the plaintiffs’ right of the injunctive relief demanded.
While granting- a temporary injunction in this ease, it does not mean that the plaintiffs shall have a right, during the existence of such injunction, to in anywise control or interfere with the present control and management of the Kanawha & Michigan Railway as now constituted. By such injunction, the court does not intend that the management as now existing shall be placed in the hands of the minority stockholders or their appointees, but that the management as it now exists shall remain in statu quo. until this ease may be finally heard.
With that end in view, the court is of opinion that a temporary injunction should be allowed, and the same is so ordered, in substance, as follows:
(1) That the defendants, the Chesapeake & Ohio Railway Company, the Lake Shore & Michigan Southern Railway Company and the Hocking Valley Railway Company, and each of them, their and each of their stockholders, officers, directors, agents and servants, and each and every one of them, unless au *318 thorized by this court, be temporarily enjoined from purchasing, acquiring, receiving, holding, voting, transferring, or in any manner disposing of or acting as owner of any of the shares of the capital stock of the Kanawha.& Michigan Railway Company.
(2) That the defendant, the Kanawha & Michigan Railway Company, its stockholders, officers, directors, agents and servants, and each and every one of them, be temporarily enjoined from, in any manner, -recognizing or accepting either the Chesapeake & Oh:o Railway Company or the Lake Shore & Michigan Southern Railway Company as the owner or holder of any shares of its capital stock, and from permitting said companies voting such said stock, whether by proxy or otherwise; and from recognizing as valid any transfer, mortgage, pledge, or assignment by either of said companies of such said stock.
(3) That the individual defendants named, and each of them, be temporarily enjoined from doing any and every act and thing intended or intending to place the capital stock of the Kanawha & Michigan Railw-ay Company under the control of either the Chesapeake & Ohio Railway Company or the Lake Shore & Michigan Southern Railway Company or the Hocking Valley Railway Gompany, or any person or persons, association or corporation, in lieu of either of said companies.
The foregoing order, however, is not intended to operate so as to transfer the control and management of said corporation or to permit the management to be controlled by or transferred to the plaintiffs or their -assigns or any person or persons acting for them; but that the business management of said Kanawha & Michigan Railway Company shall be and remain in statu quo with the right on the part of its managerial officers and agents to operate the same as heretofore, without hinderance or interruption upon the part of the plaintiffs or either of them or their agents, servants or assigns.
The foregoing is the substance of what should be contained in the interlocutory order. It may be that some of the language, upon the court’s attention being called thereto, ought to be changed in order to conform to’ a proper temporary injunction, and if so, that may be done. Furthermore, the temporary restraining order now in force, will be modified so as to conform to the injunction granted.
*319 The foregoing order is conditioned upon the plaintiffs executing bond, conditioned according to law, in the sum of $20,000.
And otherwise than as modified, the motion of the defendants to dissolve the temporary restraining order is denied. Let exceptions be noted.